**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| KUHN FOR CONGRESS, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 2:13-cv-3337-PMD-WWD |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL ELECTION COMMISSION, | ) | PROPOSED FINDINGS OF FACT |
| | ) | AND CONCLUSIONS OF LAW |
| Defendant. | ) | |
| _____ | ) | |

In the instant action, Plaintiff challenges the November 5, 2013, decision of Defendant to fine Plaintiff $8,800 for the late filing of its April 2013 Quarterly Report. (See Dkt. No. 1 at 3 of 4.) This matter is before the Court upon Defendant's Motion to Dismiss, and the motion has been referred to the undersigned for the issuance of a Report and Recommendation on the motion. (See Dkt. No. 27.) For the reasons set forth herein, Defendant's motion should be granted.

**PROPOSED FINDINGS OF FACT**

1.  The Federal Election Campaign Act, 52 U.S.C. §§ 30101-30146 (formerly 2 U.S.C. §§ 431-457) ("FECA"), requires every "political committee" — which includes candidate campaigns, political parties, and other political organizations, *see* 52 U.S.C. § 30101(4)-(6) (2 U.S.C. § 431(4)-(6)) — to designate a treasurer to maintain the committee's financial records. *See* 52 U.S.C. § 30102(a)-(d) (formerly 2 U.S.C. § 432(a)-(d)).[1]

---

[1] Effective September 1, 2014, the provisions of FECA that were codified in Title 2 of the United States Code were recodified in a new title, Title 52. *See* Editorial Reclassification Table, http://uscode.house.gov/editorialreclassification/t52/Reclassifications_Title_52.html. To avoid confusion,

2. The treasurer must sign and file reports that detail, among other things, the committee's receipts and disbursements. 52 U.S.C. § 30104(a)-(b) (2 U.S.C. § 434(a)-(b)).

3. FECA establishes a periodic schedule for such reports. Under that schedule, a candidate committee must file (i) a pre-election report 12 days before the relevant election; (ii) a post-election report 30 days after the relevant election; and (iii) quarterly reports 15 days after each calendar quarter ends, "except that the report for the quarter ending December 31 shall be filed no later than January 31 of the following calendar year." 52 U.S.C. § 30104(a)(2)(A)(i)- (iii)) (2 U.S.C. § 434(a)(2)(A)(i)-(iii)).

4. Authorized committees for candidates seeking election to the United States House of Representatives file their reports directly with the Federal Election Commission ("FEC" or "Commission"). 52 U.S.C. § 30102(g)(3) (2 U.S.C. § 432(g)(3)).

5. The FEC is the independent agency of the United States government with exclusive jurisdiction over the administration, interpretation, and civil enforcement of FECA. *See generally* 52 U.S.C. §§ 30106(b)(1), 30107(a), 30108 (2 U.S.C. §§ 437c(b)(1), 437d(a), 437g).

6. FECA establishes a detailed administrative process for the Commission to review alleged violations of the Act. *See* 52 U.S.C. § 30109(a) (2 U.S.C. § 437g(a)); *see also* 11 C.F.R. §§ 111.3-111.24 (regulations governing Commission's enforcement process).

---

this submission indicates in parentheses the former Title 2 citations.

7.    In 1999 Congress amended FECA to create a streamlined enforcement system for violations of the periodic filing requirements. *See* Treasury and General Government Appropriations Act, 2000, Pub. L. No. 106-58, § 640, 113 Stat. 430, 476-77 (1999) (codified at 52 U.S.C. § 30109(a)(4)(C) (2 U.S.C. § 437g(a)(4)(C))). Specifically, Congress authorized the Commission to directly assess civil money penalties for violations of 52 U.S.C. § 30104(a), (2 U.S.C. § 434(a)), which establishes, *inter alia*, the deadlines for political committees' disclosure reports. Congress recently amended FECA to extend the Commission's Administrative Fines program through December 31, 2018. Extension of Admin. Penalty Auth. of Federal Election Commission, Pub. L. 113-72 § 1, 127 Stat. 1210, 1210 (Dec. 26, 2013).

8.    In 2000, the Commission promulgated regulations implementing FECA's administrative-fines mechanism. *See* Administrative Fines, 65 Fed. Reg. 31,787 (May 19, 2000) (codified as amended at 11 C.F.R. §§ 111.30-111.46). These regulations establish the procedures that the Commission follows in cases that the Commission determines are appropriate for treatment under the administrative-fines process. 11 C.F.R. § 111.31.

9.    The Commission's regulations define overdue reports as "late" up until a certain number of days after the due date; after that date, the report is defined as "not filed." 11 C.F.R. § 111.43(e)(2).

10.   Reports that are not election sensitive — including the quarterly reports due in April of each year, 11 C.F.R. § 104.5(a)(1) — are "late" if filed within thirty days of their due date, and they are considered "not filed" after that point. 11 C.F.R. § 111.43(e)(1).

3

11. The Commission's regulations also establish the schedules of civil penalties authorized by 52 U.S.C. § 30109(a)(4)(C)(i)(II) (2 U.S.C. § 437g(a)(4)(C)(i)(II)). *See* 11 C.F.R. § 111.43(a)-(c). These penalty schedules take into account whether the untimely (or not filed) report was election sensitive, how late it was filed, the dollar amount of the receipts and disbursements it detailed, and the number of prior violations by the respondent. *See id*.

12. John R. Kuhn was a candidate in the Republican Party's 2013 special election primary for the South Carolina First District House of Representative seat. (Pl.'s Pet. for Review ¶¶ 1, 2.)

13. Plaintiff Kuhn for Congress was Mr. Kuhn's principal campaign committee. (AR001-002.[2]) Kuhn for Congress registered with the FEC in January 2013 as the principal campaign committee for Mr. Kuhn's special election campaign by filing its FEC Form 1. (*Id*.)

14. Under 52 U.S.C. § 30104(a)(4)(A) (2 U.S.C. § 434(a)(4)(A)), the Kuhn Committee's April 2013 quarterly report was due on April 15, 2013, after the special election primary held on March 19, 2013, (Pet. at 2), which the candidate lost.

15. The Kuhn Committee failed to timely file its April 2013 Quarterly report. (Pet. at 8, 10).

16. On May 3, 2013, the FEC's Assistant Staff Director emailed the Kuhn Committee a letter notifying the Committee and its treasurer that the April 2013 Quarterly Report had not been filed by the statutory deadline. (AR014-015, AR016.)

---

[2]     (Defendant Federal Election Commission's Administrative Record (Mar. 28, 2014) (Docket No. 28-1).

That letter advised the Committee to file the report immediately and warned that civil money penalties might result from the Committee's failure to timely file the report. (AR014.)

17. The Kuhn Committee filed its April 2013 Quarterly Report on August 20, 2013 (Pet. at 10), more than 120 days after the statutory deadline for filing the report. 52 U.S.C. § 30104(a)(2)(A)(iii) (2 U.S.C. § 434(a)(2)(A)(iii)).

18. Because the Kuhn Committee's April 2013 Quarterly Report was filed more than 30 days after it was due, the Commission deemed the report "not filed" under the applicable FEC regulation, 11 C.F.R. § 111.43(e)(1).

19. The Commission initiated an administrative-fines proceeding against the Kuhn Committee for its unfiled April 2013 Quarterly Report, and the matter was designated as AF No. 2751. (AR032-035.)

20. On July 23, 2013, the Commission decided by a vote of 5 – 0 to find "reason to believe" that the Kuhn Committee had violated 52 U.S.C. § 30104(a) ( 2 U.S.C. § 434(a)) by failing to file the required April 2013 Quarterly Report. (AR036-037.)

21. In the absence of reported campaign activity, *i.e.* the committee's total receipts and disbursements for the period covered by the unfiled report, the Commission estimated $343,963 of campaign activity pursuant to the formula specified in the Commission's regulations. AR035-038; *see* 11 C.F.R. § 111.43(d)(2)(i) (explaining formula for estimating unreported campaign activity of political committees).

22. Based on the Commission's schedule of civil money penalties at 11 C.F.R. § 111.43, the Commission calculated the appropriate penalty for the Kuhn Committee's reporting violation to be $8,800. (AR038.)

5

23.     The Commission notified the Kuhn Committee and its treasurer, Amanda Michelle Perry, of its reason-to-believe determination in a letter dated July 24, 2013, that was successfully delivered the following day. (AR038-050, AR051-052.)

24.     In addition to informing the Kuhn Committee and its treasurer of the Commission's reason-to-believe determination and civil penalty calculation, the letter explained that any challenge to the Commission's reason-to-believe finding and/or civil penalty calculation must be submitted to the Commission in writing and received within 40 days of that finding, *i.e.* by September 1, 2013. (AR038-039.)

25.     The letter further explained the three permissible grounds for challenges to an administrative fine: "(1) a factual error in the RTB finding; (2) miscalculation of the calculated civil money penalty by the FEC; or (3) your demonstrated use of best efforts to file in a timely manner when prevented from doing so by reasonably unforeseen circumstances that were beyond your control." (AR039.) The letter provided specific examples of circumstances that would be considered reasonably unforeseen and beyond the Committee's control as well as circumstances that do not meet that standard. (AR039.) In addition, the letter attached a copy of the Commission's administrative-fine regulations. (AR042-050.)

26.     The notification letter to the Kuhn Committee included the factual and legal basis for the finding, the amount of the proposed civil penalty, and an explanation of the respondent's right to challenge both the reason-to-believe finding and the amount of the penalty. 11 C.F.R. § 111.32. Upon receipt of this notification, the Kuhn Committee could either pay the penalty or challenge the finding or proposed penalty. 11 C.F.R. § 111.33.

27.     By statute, the "Commission may not make any determination adverse" to a person regarding a reporting disclosure requirement "until the person has been given written notice and an opportunity to be heard before the Commission." 52 U.S.C. § 30109(a)(4)(C)(ii) (2 U.S.C. § 437g(a)(4)(C)(ii)).

28.     If the Kuhn Committee wished to challenge the Commission's reason-to-believe finding or proposed penalty, it was required to file a written response that "detail[s] the factual basis supporting its challenge and include[s] supporting documentation" within 40 days of the Commission's finding. 11 C.F.R. § 111.35(a), (e).

29.     There are three possible grounds for such an administrative challenge: (1) factual errors in the Commission's finding (such as if the report was, in fact, timely filed); (2) inaccurate calculation of the penalty; or (3) a showing that

> The respondent used best efforts to file in a timely manner [but] was prevented from filing in a timely manner by reasonably unforeseen circumstances that were beyond the control of the respondent; and . . . [t]he respondent filed no later than 24 hours after the end of these circumstances.

11 C.F.R. § 111.35(b)(1)-(3).

30.     The regulations provide that "reasonably unforeseen circumstances" beyond a filer's control that would satisfy this "best efforts" defense include events such as a failure of Commission computers or Commission-provided software despite respondent seeking technical assistance from the Commission, severe weather, and natural disasters, 11 C.F.R. § 111.35(c), but do not include causes such as negligence, delays caused by committee vendors or contractors, or staff illness, inexperience, or unavailability. *See* 11 C.F.R. § 111.35(d).

31.     The letter finally advised that "'failure to raise an argument in a timely fashion during the administrative process shall be deemed a waiver' of your right to present such argument in a petition to the U.S. district court under 2 U.S.C. § 437g [52 U.S.C. § 30109]" (AR039 (quoting 11 C.F.R. § 111.38).)

32.     The Kuhn Committee did not submit an administrative challenge to the Commission's reason-to-believe determination or civil penalty calculation.

33.     On October 31, 2013, the Commission approved, by a vote of 6 – 0, its Reports Analysis Division's recommendation to make a final determination that the Kuhn Committee and its treasurer violated 52 U.S.C. § 30104 (2 U.S.C. § 434(a)), and to assess a civil money penalty of $8,800. (AR057-058.)

34.     The Kuhn Committee ultimately reported $522,776 of campaign activity, more than $178,000 of campaign activity above the estimated $343,963 of activity upon which the $8,800 civil penalty was based. (AR059.) The Commission's regulations would have yielded a higher penalty if the actual amount of the Committee's campaign activity had been disclosed earlier. *See* 11 C.F.R. § 111.43 (a) (providing that civil penalty for $450,000-$549,999.99 of campaign activity is $10,450). The Kuhn Committee received the lesser $8,800 civil money penalty proposed in connection with the Commission's reason-to-believe finding, because the Commission's regulatory formula yielded an underestimate of the level of activity in this case. (AR059.)

35.     The Commission notified the Kuhn Committee and its treasurer of its final determination in a letter dated November 5, 2013, and successfully mailed the letter to the Committee's address of record the next day. (AR059-064.)

36. The notification letter advised the Kuhn Committee and its treasurer that their "failure to raise an argument in a timely fashion during the administrative process shall be deemed a waiver of [their] right to present such an argument in a petition to the district court under 2 U.S.C. § 437g [52 U.S.C. § 30109]." (AR060 (citing 11 C.F.R. § 111.38).)

## CONCLUSIONS OF LAW

1. When district courts determine whether an FEC administrative determination should be modified or set aside that review is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.

2. Under the APA, "courts must uphold agency action unless it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Va. Agric. Growers Ass'n, Inc. v. Donovan*, 774 F.2d 89, 93 (4th Cir. 1985) (quoting 5 U.S.C. § 706(2)(A)); 5 U.S.C. § 706(2)(A), (C).

3. "[I]n reviewing agency action" the "district court sits as an appellate tribunal," and "the question whether [the agency] acted in an arbitrary and capricious manner is a legal one which the district court can resolve on the agency record." *Univ. Med. Ctr. of S. Nev. v. Shalala*, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999).

4. Judicial review of final agency action is based exclusively on the administrative record that was before the Commission. 5 U.S.C. § 706; *Trinity Am. Corp. v. EPA*, 150 F.3d 389, 401 n.4 (4th Cir. 1998).

5. "Judicial review of agency action is highly deferential and begins with a presumption of validity." *Am. Whitewater v. Tidwell*, 959 F. Supp. 2d 839, 849 (D.S.C. 2013) (citing *Natural Res. Def. Council v. EPA,* 16 F.3d 1395, 1400 (4th Cir.1993)).

6. The standard of review "is a narrow one"; "[t]he Court is not empowered to substitute its judgment for that of the agency." *Va. Agric. Growers Ass'n, Inc.*, 774 F.2d at 93 (citations and internal quotation marks omitted). The agency's action must be upheld if "the agency . . . provide[s] an adequate explanation for its actions . . . [that] show[s] a 'rational connection between the facts found and the choice made.'" *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 350 (4th Cir. 2001).

8. The party challenging the agency action bears the burden of proof to show that it is entitled to relief. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884-85 (1990).

9. Because plaintiff failed to submit an administrative challenge regarding the FEC's reason-to-believe determination or civil penalty calculation, *see* Finding of Fact ¶ 32, it has waived any right to present its arguments for the first time in this litigation. 11 C.F.R. § 111.38.

10. "It is inappropriate for courts reviewing appeals of agency decisions to consider arguments not raised before the administrative agency involved." *Pleasant Valley Hosp., Inc. v. Shalala*, 32 F.3d 67, 70 (4th Cir. 1994). "[C]ourts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37 (1952)

11. Even if plaintiff had not waived its arguments, this Court would conclude that the FEC's assessment of an $8,800 civil penalty against plaintiff was reasonable and not arbitrary or capricious, and must be affirmed.

12. The Administrative Record establishes that plaintiff failed to timely file its April 2013 Quarterly Report as required by FECA and the FEC's regulations. (AR054-58.) Plaintiff admits that its report was filed "four months and a week after it was due." (Pl.'s Pet. at 3.)

13. The $8,800 civil penalty assessed by the FEC against plaintiff was properly calculated pursuant to FECA and the FEC's regulations, reasonable, and neither arbitrary nor capricious. *See* AR038, AR054-058; 11 CFR § 111.43(a).

14. Because plaintiff failed to submit an administrative challenge regarding any attempt to rely on the regulatory "best efforts" defense, plaintiff has waived its right to present any arguments in support of that regulatory defense in this litigation. 11 C.F.R. § 111.38.

15. In any event, plaintiff's allegations in its submissions to this Court fail to satisfy the regulatory requirements for the "best efforts" defense, *i.e.,* that plaintiff "used best efforts to file in a timely manner" but was prevented from doing so "by reasonably unforeseen circumstances" beyond plaintiff's control. 11 C.F.R. § 111.35(b)(3). Plaintiff alleges "extenuating circumstances" that include alleged difficulties finding someone "willing to serve as Campaign Treasurer"; the collective lack of experience or knowledge regarding FEC filing obligations on the part of the candidate, treasurer, and alternate treasurer; the treasurer's pregnancy and delivery of her baby "12 days earlier than expected"; and alleged errors by the Committee's accountant. (Pl.'s Pet. at 4-10.)

These allegations, even if all true, fall clearly within the categories of circumstances explicitly *excluded* from the best-efforts defense, *i.e.,* errors that arise from staff negligence; delays caused by committee vendors or contractors; and illness, inexperience, or unavailability of the treasurer or other staff. *See* 11 C.F.R. § 111.35(d). The Court thus concludes that even if plaintiff had not waived its right to rely on the best efforts defense, plaintiff's allegations fail to meet the regulatory requirements of that defense.

16.     The Court also concludes that the FEC afforded plaintiff due process and that plaintiff has failed to supports its claim that the FEC's administrative action infringed its rights under the Fifth and Fourteenth Amendments of the United States Constitution. "Whether a deprivation of constitutional rights has occurred is not dependent upon the subjective feelings or beliefs of a plaintiff. In order to properly maintain a due process claim, a plaintiff must have been, in fact, deprived of a constitutionally protected liberty or property interest." *Tigrett v. Rector and Visitors of Univ. of Va.*, 290 F.3d 620, 628 (4th Cir. 2002). Plaintiff has not identified any due process violation in this case, and the Court finds no such violation.

17.     The Court accordingly finds that plaintiff has failed to state a claim and RECOMMENDS THAT ITS Petition for Review be DISMISSED.[3]

---

[3]     The Court directed the Commission to submit proposed findings and conclusions and provided that Plaintiff should submit objections. The Commission timely complied with that direction but Plaintiff has failed to do so.

     IT IS SO RECOMMENDED.

October 8, 2014

                                        WALLACE W. DIXON
                                        UNITED STATES MAGISTRATE JUDGE

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).